UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRONETTA S. BEASLEY | ) | CASE NO.  1:14CV2118 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Bronetta S. Beasley Disability Insurance Benefits (DIB).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her May 22, 2013 decision in finding that Plaintiff was not disabled.  The ALJ determined that she is unable to perform her past relevant work, she is able to perform other work that exists in substantial numbers in the national economy (Tr. 8-70). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I. PROCEDURAL HISTORY

Plaintiff, Bronetta S. Beasley, filed her application for DIB on January 5, 2012, alleging she became disabled on January 4, 2012  (Tr. 184-191).  Plaintiff's application was denied initially and on reconsideration (Tr. 85-127, 134-140).  Plaintiff requested a hearing before an ALJ, and on February 6, 2013, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, and Dr. James Soldner, a vocational expert, also testified (Tr. 27-70).

On May 22, 2013, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 8-22). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

## II.  STATEMENT OF FACTS

Plaintiff was born on December 5, 1965, which made her forty-nine years old when the ALJ denied her request for DIB (Tr. 8-22). Plaintiff has a high school education and past work experience as a machine operator and cashier (Tr. 27-70).

## III.  SUMMARY OF MEDICAL EVIDENCE

Plaintiff received care at the Free Clinic of Lorain County. On April 5, 2010, she complained of pain and cramping in her feet and shoulders (Tr. 659). Her A1C was elevated at 11.6, and she was diagnosed with poor diabetes control (Tr. 681). Subsequent tests documented continuing elevated A1C, at 7.4 on April 1, 2011 and 9.7 on July 26, 2011 (Tr. 674, 677). On April 19, 2011, they found paresthesia in her bilateral lower extremities consistent with diabetic neuropathy (Tr. 652). On December 8, 2011, they found multiple trigger points in her upper arms, upper back, upper thighs and knees, in addition to pelvic pain. The generalized pain had been present for eight months (Tr. 649). On February 20, 2012, they noted continued complaints of multiple joint pain worse in the past year, with x-rays revealing only mild osteoarthritis. A diagnosis of fibromyalgia was made (Tr. 647).

On April 14, 2011, she was seen by Dr. Serna for complaints of pain and limitation of motion in her left shoulder. An MRI showed mild to moderate rotator cuff tendinopathy and AC joint arthritis.

2

She was given an injection (Tr. 432-436).

On November 28, 2011, Plaintiff was seen in the emergency room at Mercy Regional Medical Center, complaining of pain in her legs, back, arm, hands, and neck.  She was diagnosed with hyperglycemia and myalgia and told to follow up with her primary care physician (Tr. 463-464). She was recorded to be a non-smoker (Tr. 460).

Dr. Mendoza is Plaintiff's primary care physician.  On February 7, 2012, he completed a questionnaire, and reported that Plaintiff suffers from herniated disc, fibromyalgia and diabetes with pain in her legs, arms, back, feet and hands that had become increasingly worse in the last two years (Tr. 631).  He reported that she had a poor response to pain medications, such as Vicodin and Ultram, and that Neurontin provided little relief for her neuropathy.  He stated that she could not do sustained lifting, bending or repetitive activity, although she could care for her personal needs (Tr. 632).  He attached the MRI results (Tr. 636-639) and an endocrinologist's notes in support of his opinion (Tr. 641-643). His office notes of that date record limitation of motion and tenderness in both shoulders, tenderness in left elbow, hip and ankle, right ankle, lumbar spine and thoracic spine.  He diagnosed diabetes and fibromyalgia and prescribed Vicodin for both the diabetic pain and fibromyalgia (Tr. 719-720). On September 20, 2012, Dr. Mendoza noted that Plaintiff had constant moderate back pain that was increased by twisting, sitting, lying down and bending.  She also experienced moderate neck pain aggravated by twisting and bending. On examination, she was found to have limitation of motion and muscle spasm in both the neck and back.  He referred her for a neurosurgical consult (Tr. 723-724).  He noted that she had quit smoking on August 3, 2011 (Tr. 726).

On May 7, 2010, Plaintiff came under the care of Dr. Jeet, an endocrinologist, for treatment of her uncontrolled diabetes (Tr. 608-609).  He found that she also suffered from diabetic neuropathy and radiculopathy at the level of the neck and lower extremities based upon the result of abnormal

3

microfilament (Tr. 607). He ordered an MRI of her spine, which showed multiple level disc bulges, and he referred her to neurosurgeon Dr. Sertich (Tr. 624-628). Her blood glucose was measured at 301 on September 13, 2011 (Tr. 622). On October 3, 2011, Dr. Jeet noted that control of Plaintiff's diabetes was worsening, she was now describing episodes of blurred vision. He diagnosed pancreatic disease associated with her uncontrolled diabetes (Tr. 604-605). On November 28, 2011, her glucose was measured at 274 (Tr. 616). On December 12, 2011, he noted that her symptoms included fatigue, blurred vision, and edema, and that she had diabetic neuropathy pain, numbness in lower legs, worse in the evening (Tr. 600-601). Subsequent records document persistent elevation in her A1C (Tr. 791, 794, 797).

On January 21, 2011, Plaintiff was seen at Neurospine Center by Dr. Gonzalez for evaluation of the increasing pain in her neck. On examination, he found tenderness and limitation of motion in the neck and thoracic and lumbar spines. Straight leg raising was positive for back pain. Deep tendon reflexes were depressed at 1+ and he could not elicit either ankle jerk. He reviewed the MRI findings from January 8, 2011, and concluded that her pain was related to mechanical back pain secondary to degenerative changes throughout the spine, obesity, and possible diabetic neuropathy. He recommended conservative therapy, as her problems could not be corrected with surgery (Tr. 811-812). Plaintiff was not seen again until September 7, 2012, when she reported worsening severe back pain, and he found that she had severe limitation of motion in the lumbar spine. There was sensory loss in the feet and reflex loss in both the upper and lower extremities. His diagnosis remained the same, and he again recommended physical therapy (Tr. 809). On November 26, 2012, she was evaluated by Dr. Choi at the request of Dr. Mendoza. Dr. Choi found deep tendon reflexes of the knees and ankles were absent. Her gait was antalgic. Sitting and standing were uncomfortable. Straight leg raising was limited on the left. Motion of the spine was limited. He concluded that she

4

suffered from mechanical back pain, spondylosis, left L5 radicular pain, and recommended injections (Tr. 804-805).

On February 21, 2012, Plaintiff was seen by psychologist Thomas Zeck, at the request of the state agency charged with the medical evaluation for the disability claim. She reported to him that she did not have any health insurance and the family income consisted of her husband's disability benefits (Tr. 703). She had a past history of drug abuse, but had been clean for two years. She was taking her insulin and Neurontin. She attended AA meetings. She had a difficult time recalling dates (Tr. 704). She reported difficulty with sleep and chronic pain. Her mood and affect were consistent with depression. He diagnosed Major Depressive Disorder and Cocaine Dependence, in remission. He assigned a GAF score of 50, indicating severe impairment. He opined that she would have a very difficult time relating appropriately to co-workers and supervisors (Tr. 707-708).

On April 12, 2012, Plaintiff was seen by Dr. Darr, at the request of the state agency. He found mild limitation of motion in her back and knees. He concluded that she suffers from low back and neck pain, probably from degenerative disc disease, which pose mild to moderate limitations on her ability to lift and carry (Tr. 714). She told him that she did not use tobacco (Tr. 712).

On April 19, 2012, Dr. Das reviewed the records on behalf of the state agency, and concluded that Plaintiff suffers from severe impairments of osteoarthritis, history of rotator cuff repair, decreased range of motion in spine and fibromyalgia, but her strength and manipulative abilities were intact. She concluded that Plaintiff could perform light work with occasional climbing stairs and ramps, stooping, crouching, crawling. She gave weight to Dr. Darr, but not Dr. Mendoza (Tr. 94-95).

On June 26, 2012, Dr. Green reviewed the records on behalf of the state agency, and she agreed with the assessment previously made by Dr. Das (Tr. 110-111).

Plaintiff was seen at The Nord Center for mental health assessment on April 16, 2012, where she was diagnosed with Major Depression and PTSD, and assigned a GAF score of 51. She was found to suffer from fatigue, insomnia, difficulty concentrating, repeated episodes of tearfulness (Tr. 755-756). She was noted to be withdrawn and guarded and avoiding eye contact (Tr. 757). She reported difficulties interacting with people (Tr. 764).

On December 12, 2012, Plaintiff was admitted to Mercy Regional Medical Center for abdominal pain. She was diagnosed with diverticulitis (Tr. 849-851).

On January 17, 2013, Dr. Mendoza completed a Physical Residual Functional Capacity Questionnaire. He reported that Plaintiff suffers from low back pain with radiculopathy down her left leg and diabetic neuropathy in her legs and hands. Sitting, twisting and bending increased the pain. She was in constant pain and experienced moodiness and agitation every day. She could not tolerate even low stress. She was unable to sit or stand for more than ten minutes at a time in a work setting, and could perform no more than two hours in an eight-hour day. She could not lift ten pounds occasionally. She would likely miss work more than four days in a month. She cannot tolerate stress, cold or humidity (Tr. 832-836).

## IV.    **SUMMARY OF TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that the date listed on her application for benefits of January 4, 2012 was not when her disability began, but it was the date that she realized she would not be able to sustain work activity. The date of January 4, 2012 was the day she was laid off from her job (Tr. 49). However, she stated that she applied for disability benefits at that time because she finally accepted that she was not going to feel better and be able to sustain work activity (Tr. 32). She thought that was the day she felt pain all over and she went to the emergency room at Mercy

Hospital, where tests were done and she was told she had degenerative discs in her back and given a shot (Tr. 33, 49). She has not had health insurance for most of the relevant period of time, although she was approved for Medicaid for several months at the end of 2012 (Tr. 33). In reviewing her work history, she admitted to working a variety of jobs, many of which were part-time or for temporary agencies, and she was not certain of the dates for all of them (Tr. 34-47). She described discomfort sitting in the chair during the hearing, due to increased back pain (Tr. 48). She had experienced significant increase in her pain when she worked her last job at the end of 2011 and would come home every night stiff and swollen and in pain (Tr. 49). She had run out of her medication about two weeks before the hearing, and had gone eight months without it in the year before the hearing (Tr. 50). She experienced increased pain and stiffness when she was without medication. She had been prescribed insulin and Neurontin, but she was without them for most of the relevant period. When she was able to take the insulin regularly, her blood sugar readings improved, but she never achieved good control (Tr. 52). She had completed a substance abuse program in 2010, and she attended meetings to maintain her sobriety whenever her heath permitted (Tr. 53-54). She has good days when she can do some cleaning and cooking, but mostly bad days when she is in too much pain to do anything (Tr. 56-57). She was being treated for depression at The Nord Center, but she could not afford the medication they prescribed. She has a poor memory for dates and has trouble concentrating (Tr. 58).

  Thereafter, Vocational Expert Soldner testified at the request of the ALJ. He testified that Plaintiff's past relevant work consists of machine operator and cashier (Tr. 59). In response to a hypothetical question for an individual who can engage in light work, with occasional push and pull with the upper or lower extremities, and occasional climbing ramps and stairs, occasional crouching, crawling, or stooping, with unskilled work but no machine driven pace, and only occasional interaction with the public, co-workers and supervisors, including speaking, signaling, taking

7

instructions and helping, he testified that such a person cannot perform her past relevant work (Tr. 59-60). In addition, other jobs that such a hypothetical person could perform are marker II, fruit distributor, and plastic hospital products assembler (Tr. 60). In response to questions from Plaintiff's counsel, the vocational expert testified that missing four days of work per month would not be tolerated by employers in the competitive job market, nor would an employee being off task more than 10-15 percent of the workday (Tr. 68-69).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

**VII.   ANALYSIS**

Plaintiff raises four legal issues:

A.   Whether the finding that Plaintiff can perform substantial gainful activity is supported by substantial evidence?   42 U.S.C. Section 405(g).

B.   Whether the Commissioner accorded appropriate weight to the report of the treating physician? *Shelman v. Heckler*, 821 F.2d 316, 320-1 (6th Cir. 1987); 20 C.F.R. 404.1527.

C.   Whether the Commissioner accorded appropriate weight to the report of the consultative examiner?   20 C.F.R. Sections 404.1502 and 404.1527(c)(2).

D.   Whether the Commissioner's determination as to the claimant's credibility and residual functional capacity are supported by substantial evidence? *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007).

In her decision, the ALJ found that Plaintiff is not disabled.  She found that Plaintiff is able to perform a reduced range of light work and is unable to perform her past relevant work.  However, she can perform other substantial gainful activity, such as the jobs of marker, fruit distributor, and plastic hospital products assembler (Tr. 21).  She gave great weight to the report of Dr. Darr and little weight to the report of Dr. Mendoza (Tr. 18).

Based upon substantial evidence, the ALJ correctly found that Plaintiff's allegations were not fully credible. The ALJ found that Plaintiff's physical impairments significantly reduced her capacity to work, but correctly concluded that the record did not fully support Plaintiff's allegations of disabling limitations (Tr. 17).  An ALJ's finding concerning the credibility of an applicant is entitled to great weight and deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Sixth Circuit has stated that courts are "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F3d 469, 476 (6th Cir. 2003).  In reviewing a claimant's

credibility as to subjective allegations, an ALJ must review whether a claimant's symptoms and limitations are supported by the medical and other evidence. 20 C.F.R. Section 404.1529(a). In making this determination, the ALJ thoroughly reviewed the factors for evaluating Plaintiff's credibility, and noted that the record did not fully support Plaintiff's allegations (Tr. 16-20).

In determining Plaintiff's credibility, the ALJ also found inconsistencies between her complaints and the record. She noted that the objective medical evidence did not support Plaintiff's complaints (Tr. 17). This undermined her credibility. 20 C.F.R. Section 404.1529(c)(4) (stating an ALJ must consider whether there are conflicts between a claimant's statements and the signs and laboratory findings).

In this case, the ALJ noted that imaging showed only mild-to-moderate degenerative disc disease (Tr. 17; Tr. 639). In addition, the consultative examination was normal, except for some decreased range of motion in the spine (Tr. 711-718). Furthermore, while Plaintiff complained of upper extremity pain and weakness, she did not complain of those symptoms at the consultative examination, and the physical examination showed good strength and range of motion in the upper extremities (Tr. 18; 713-715). While Plaintiff claimed she had severe mental limitations, examinations were essentially normal, and her treatment providers opined that she had no more than moderate symptoms and functional limitations (Tr. 776). Hence, the undersigned finds that substantial evidence supports the ALJ's finding that the objective evidence did not support Plaintiff's complaints.

The ALJ also noted that Plaintiff received conservative treatment and only took over-the-counter medication to relieve her pain (Tr. 17). These facts also undermined Plaintiff's credibility. 20 C.F.R. Section 404.1529(c)(3)(iv)-(v) (stating an ALJ must consider the type of treatment). In regard to Plaintiff's claims of mental impairments, the ALJ noted that she had not sought consistent mental health treatment (Tr. 18). 20 C.F.R. Sections 404.1529(c)(4) (stating an ALJ must consider

inconsistencies in the evidence).

The ALJ also noted that Plaintiff's reports of the reasons she stopped working were inconsistent (Tr. 19). At one point, she stated that she became unable to work and filed for disability benefits in January 2012, after an emergency room visit, but there were no records of treatment on that date (Tr. 32). She also claimed that her last day of work was in December 2011 (Tr. 49). The ALJ correctly found these inconsistencies undermined Plaintiff's credibility. 20 C.F.R. Section 404.1529(c)(4). Furthermore, the ALJ also noted that Plaintiff testified that she stopped working because she was laid off, not due to her impairments (Tr. 17; 49).

Furthermore, the ALJ noted that Plaintiff's activities were not consistent with her complaints. She indicated that she was able to care for her personal needs, occasionally take care of her grandchildren, attend church and peer support meetings, shop, and go to medical appointments (Tr. 53, 55, 253-256). In addition, she indicated she was able to perform some light housework (Tr. 254), which the ALJ noted was inconsistent with what she told Dr. Zeck, i.e., that her husband took care of all of the household chores (Tr. 19, 707). These activities do not support Plaintiff's claims. 20 C.F.R. Section 404.1529(c)(3)(i) (stating an ALJ must consider a claimant's activities).

Thus, the ALJ gave a number of valid reasons, supported by the record, for finding Plaintiff was not entirely credible.

Plaintiff does not dispute the ALJ's finding that Dr. Darr's examination was inconsistent with Plaintiff's complaints (Tr. 18). However, she notes that other physicians recorded positive findings on examination (Pl. Br. at 12). She also suggests that her impairments could have caused her upper extremity problems (Pl. Br. at 13). Hence, she is arguing that the evidence supports her testimony.

Plaintiff also suggests that Dr. Darr's examination was unreliable because he did not examine her for fibromyalgia (Pl. Br. at 12). The Plaintiff further argues that the ALJ should examine all of

12

the evidence, including Dr. Darr's report, to determine Plaintiff's actual limitations. *See* Social Security Ruling 12-2p, 2012 WL 3104869, at *5 (explaining that the evaluation for symptoms caused by fibromyalgia is the same as any impairment).

Plaintiff alleges that the ALJ concluded that her work record from October 2011 to January 2012 was evidence that she was not disabled (Pl. Br. at 12). However, the Defendant could not find any place in the decision where the ALJ found her working in that period of time showed she was not disabled. Actually, the ALJ noted that Plaintiff was able to work while receiving treatment, which suggested that the treatment was effective (Tr. 17). She observed that Plaintiff's alleged mental impairments had not precluded her from working, which showed that her limitations were not as severe as alleged (Tr. 19). The ALJ also noted that Plaintiff gave different accounts of why she stopped working (Tr. 19). And the ALJ noted that Plaintiff testified that she was laid off from work (Tr. 19). Hence, the record does not support Plaintiff's contention that the ALJ concluded that the fact that she worked in late 2011 and early 2012 meant that she was not disabled.

Plaintiff admits that she "had difficulties recalling the dates of her past employment" (Pl. Br. at 13). This, in essence, undermines her testimony as to being credible, as concluded by the ALJ. Since Plaintiff admits she had trouble remembering things, she is admitting that her testimony does not entirely support her credibility. The ALJ did not err in the weight given to conflicting statements.

Plaintiff also alleges errors by the ALJ in considering her tobacco abuse. She claims that the ALJ erred in finding that she was not credible because her non-compliance with treatment was not excusable because her reason, *i.e.*, not having enough money, was belied by her smoking cigarettes (Pl. Br. at 12). The ALJ concluded that Plaintiff was non-compliant, and that her reason for non-compliance was not credible (Tr. 17-18). Nevertheless, she found the issue of non-compliance was irrelevant, because even when non-compliant with treatment recommendations, Plaintiff was still able to perform work at the residual functional capacity found by the ALJ.

13

The ALJ did not totally reject Plaintiff's allegations. The ALJ considered Plaintiff's impairments, and found that she could perform a highly restricted range of light work (Tr. 16). The ALJ correctly evaluated Plaintiff's credibility, and provided specific reasons for her finding that Plaintiff was not fully credible. The undersigned finds that the ALJ's credibility finding is supported by substantial evidence.

In determining Plaintiff's residual functional capacity, the ALJ also considered the medical opinion evidence of record (Tr. 18). The ALJ gave little weight to Dr. Mendoza's opinion (Tr. 18; Tr. 631-632, 832-836). She noted that the first opinion was inconsistent, in that Dr. Mendoza opined that Plaintiff was able to care for herself, which included lifting some small objects, but that she could not do bending, repetitive movement, or lifting (Tr. 18; 631-632). Hence, she gave less weight to that opinion. 20 C.F.R. Section 404.1527(c); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006). In addition, the ALJ observed that both opinions were inconsistent with Dr. Darr's examination findings, which indicated only some decreased lumbar range of motion, and showed normal gait and strength in the extremities (Tr. 18). The ALJ was correct in according less weight to opinions that are inconsistent with substantial evidence in the record. 20 C.F.R. Section 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole).

Next, Plaintiff argues that substantial evidence did not support the ALJ's reasoning, in finding Dr. Mendoza's first opinion internally inconsistent. She interprets Dr. Mendoza's opinion to mean that she cannot bend, move repetitively, or lift on a sustained basis, and that the ability to care for herself was meant to apply to her mental functioning, not her physical abilities (Pl. Br. at 10). However, the ALJ's conclusion is supported by the record, that the prohibitions applied to physical abilities as well as mental functioning, and, therefore, the Court accepts the ALJ's interpretation of the evidence.

14

Finally, Plaintiff does not dispute that Dr. Mendoza's opinions were inconsistent with Dr. Darr's examination. However, she alleges that other examinations showed she had impairments which could have caused the limitations she claimed (Pl. Br. at 11). The ALJ agreed with her in finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 17). Plaintiff also contends that Dr. Darr's examination results should be given less weight than other examinations because the results were different (Pl. Br. at 11-12). Plaintiff is arguing that there was inconsistent medical evidence in the record. However, the ALJ is required to weigh the evidence and give proper weight based upon substantial evidence contained in the entire record.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff cannot perform past relevant work. However, she is still able to perform other work that exists in substantial numbers in the economy, and, therefore, was not disabled. Hence, she is not entitled to DIB.

Dated: May 15, 2015          */s/George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE